ALFREDO E. CANINO, demandante y apelado, *v.* SANTIAGO BELLAFLORES, INC., y SANTIAGO BELLAFLORES, demandados y apelantes.

Número 11187.

*Sometido:* 3 de noviembre de 1954. *Resuelto:* 31 de octubre de 1955.

*Rafael Pastor,* abogado de los apelantes; *Luis Ríos Algarín,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Las partes de un litigio en cobro de dinero, radicaron una estipulación en la ilustrada Sala sentenciadora, que copiada literalmente, dice así:

"Comparecen las partes por conductos de sus respectivos abogados y estipulan:

"1—Que por sentencia dictada en este caso en el día de hoy luego de celebrado el juicio en sus méritos, se condenó a la corporación demandada al pago de la suma de $4,800 cubriendo cánones de arrendamiento desde marzo primero de 1953 hasta julio 24 de 1953, ambas fechas inclusive.

"2—Las partes convienen en que esa sentencia sea firme y ejecutoria desde el momento mismo de ser dictada renunciando ambas partes al derecho de apelación y dándose por notificadas de dicha sentencia.

"3—Las partes convienen que la sentencia contenga también un pronunciamiento cubriendo la suma de $500 para el pago de los honorarios del abogado del demandante en adición a la deuda principal ante dicha, o sea la suma de $5,300 en total.

"4—El demandante renuncia al cobro de costas e intereses sobre el importe de la sentencia.

"5—Se entiende, como así lo resolvió el tribunal, que la sentencia releva al demandado Santiago Bellaflores, persona natural, de toda responsabilidad u obligación respecto al pago de la deuda o a cualquiera reclamación ulterior del demandante en relación con la misma.

"6—Queda convenido y estipulado que la subasta de los bienes embargados en este caso para hacer efectiva la sentencia se llevará a efecto dentro de un término no menor de diez días a partir de la fecha de la sentencia, debiendo notificarse a la corporación demandada oportunamente, por medio de su abogado, Lcdo. Ramos, con una copia del edicto de subasta, y si fuese adjudicada la subasta al actor será por el total de la sentencia.

"Las partes solicitan del tribunal apruebe la presente estipulación para que forme parte de la sentencia."

De acuerdo con los términos de la estipulación la ilustrada Sala sentenciadora dictó sentencia y ordenó la subasta de los bienes embargados. Posteriormente, los demandados y apelantes solicitaron se suspendiera la subasta de los bienes embargados y se ordenara una reducción del embargo en cantidad suficiente a cubrir la deuda de los demandados y apelantes, alegando que el embargo era excesivo. De la negativa del tribunal a liberar parte de los bienes embargados, es que apelan los demandados y apelantes.

La ley aplicable al caso es el art. 1709 del Código Civil de Puerto Rico que dispone: "la transacción es un contrato por el cual las partes dando, prometiendo o reteniendo, cada una alguna cosa, evitan la provocación de un pleito *o ponen término al que había comenzado.*" Tal vez deba considerarse además el art. 1715 que dispone: "la transacción

tiene para las partes la autoridad de la cosa juzgada, *pero no procederá la vía del apremio sino tratándose del cumplimiento de la transacción judicial.*"

La glosa sobre esta antiquísima institución de derecho es abundante, pero, a los fines de este caso,—un caso de transacción pura o particional "en la que las partes operan sobre y con la misma materia del litigio o controversia"—basta referirnos a la glosa de Puig Peña, que dice así:

"Las partes cumplen el contrato de transacción satisfaciendo las obligaciones siguientes: . . . la transacción tiene un designio inmediato: dar recíproca satisfacción a las diferencias existentes entre las partes en orden a la titularidad de un derecho, y un designio mediato—incorporado por su misma esencia al contrato—, y es *poner fin a un pleito* por surgir o *ya surgido.* Pues bien: no cabe duda que el designio primero es objeto fundamental que debe cumplirse fielmente por las partes. En su consecuencia, habrá que entregar las cosas, reconocer los derechos, dar efectividad a las renuncias, etc.; es decir, cumplimentar en total realidad los acuerdos de las partes en orden a la sustancia material del convenio transaccional. En este sentido parece prudente aplicar aquí las reglas que ya conocemos sobre la compraventa, instituto jurídico que encierra gran similitud con este contrato, sobre todo en su faceta de la transacción compleja . . . . Si sólo existieran recíprocas concesiones por las partes contratantes, la transacción no sería más que un contrato bilateral de tipo oneroso. Pero hay más: como dijimos, el designio de poner fin a una contienda surgida o por surgir es el fin mediato del convenio que por su naturaleza se incorpora al mismo. *Las partes, pues, tienen que considerar los puntos anteriormente discutidos como definitivamente resueltos, no pudiendo, en principio, volver nuevamente sobre los mismos. Si ello no fuera así perdería la transacción su razón de ser y existir.* ". . . . . . . . .

". . . Previendo el supuesto del incumplimiento discutió la doctrina sobre si los efectos propios de la transacción habían de ser los naturales de los contratos (como contrato que es), o, por el contrario, *debía dotarse al convenio de una posición especial injertando en el mismo una propia sustancia judicial en orden a la declaración de 'cosa juzgada' y al procedimiento para la ejecución de sentencia.*

"Pese a las disquisiciones de algunos tratadistas, es lo cierto que ya desde el Derecho romano tiene la transacción ese matiz especial que fué recogido por las principales legislaciones y, entre nosotros, por el Código Civil. Éste, efectivamente, hace la declaración general de que 'la transacción tiene para las partes la autoridad de la cosa juzgada' (art. 1816), [1715 nuestro]. Sin embargo, conviene distinguir:

a) Que se trate de transacción judicial.—En este caso si una de las partes no cumple lo estipulado puede solicitar inmediatamente que lo convenido se lleve a efecto (10 junio 1912), [España], pues tiene para las partes la misma fuerza que la sentencia firme (8 julio 1930), [España], y puede, por tanto, utilizarse el procedimiento de apremio (art. 1816, *in fine*) [1715 nuestro].

"·      .      .      .      .      .      .      .

"Si una de las partes, haciendo caso omiso de lo acordado en el contrato transaccional, *intenta reproducir sus pretensiones anteriormente deducidas, puede la otra paralizar la pretensión aduciendo en su favor la declaración de 'cosa juzgada'* que, a tenor del artículo 1816, [1715 nuestro] tiene lo acordado. La sentencia del Tribunal Supremo de 4 de abril de 1904 [España] declara que es *improcedente la demanda si hubo transacción sobre los mismos hechos objeto del pleito.* En su consecuencia, se paraliza la acción y habrá lugar a la indemnización correspondiente por el incumplimiento de lo estipulado"; IV–II Federico Puig Peña—"Tratado de Derecho Civil Español" 524–526 (ed. de la Revista de Derecho Privado de 1951). (Corchetes nuestros.)

No debe haber duda en cuanto a que fué la voluntad de las partes que la subasta para hacer efectiva la sentencia comprendiera la totalidad de los bienes embargados previamente para su aseguramiento. A tal resultado llegamos por inducción necesaria de lo convenido en la estipulación sometida—art. 1714, Código Civil—ya que en ésta no sólo se hace mención "de los bienes embargados en este caso para hacer efectiva la sentencia" si que también a que "si fuese adjudicada la subasta al actor será por el total de la sentencia". En esas condiciones estaba impedida la parte demandada, bajo la doctrina de cosa juzgada—art. 1715—de ir contra

aquello que fué objeto específico de la transacción.   Nada hay en dicho aspecto de la transacción que resulte contrario al orden público, que requiera una consideración distinta a la del mero contrato privado.   Tampoco se ha demostrado que en el contrato de transacción celebrado por las partes, y aprobado por el tribunal, haya mediado error, dolo, violencia o falsedad de documentos, que son los casos en que la transacción pueda dejarse sin efecto, de acuerdo con el art. 1716 relacionado con el art. 1217 de nuestro Código Civil.

*Debe confirmarse la resolución apelada.*