Cordero, Juez Ponente
*915 TEXTO COMPLETO DE LA SENTENCIA
Oportunamente, el Ledo. Reinaldo Pérez Ramírez {“Ledo. Pérez”) presentó ante este Tribunal un escrito de “Apelación” en el que nos solicitó la revisión de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (“TPI”) el 21 de enero de 2004, notificada el 2 de febrero de 2004. Mediante la referida Sentencia, el TPI determinó que el Ledo. Pérez no era acreedor de cierta suma consignada correspondiente a honorarios de abogado.
Veamos los hechos y el derecho aplicable que nos obliga a revocar la decisión del TPI.
I
El Ledo. Pérez presentó el 1ro de noviembre de 2001, una Demanda en la que señaló que el 28 de diciembre de 1994, la Autoridad de los Puertos (“Autoridad') otorgó una estipulación con la Unión de Empleados de Muelles (“UDEM”) en la que se acordó pagar a éste honorarios conforme los términos dispuestos en la referida estipulación. El Ledo. Pérez señaló que la Autoridad no le ha pagado los referidos honorarios.
El Ledo. Pérez anejó la estipulación del 28 de diciembre de 1994 en la que la UDEM y la Autoridad, en atención a cierto laudo emitido, llegaron a unos acuerdos en tomo a la forma y manera de cumplir con éste. Las partes acordaron que: (1) la cantidad total a satisfacerse por concepto de principal, en atención a la forma pactada para satisfacer los días acumulados y no disfrutados por concepto de vacaciones en exceso de dos (2) años asciende a $1,247,667.65; (2) la Autoridad implantaría un plan de vacaciones con el propósito de que los empleados redujeran su balance de vacaciones acumuladas y no disfrutadas; (3) la Autoridad desembolsaría la cantidad de $4,297,421.31, correspondiente a penalidades que no están en controversia; sin embargo, las partes acordaron con relación a las penalidades en controversia que: (4) acatarían lo resuelto por el tribunal en la controversia que sometiera la Hermandad de Empleados de Oficina y Ramas Anexas de la Autoridad de los Puertos (“HEO”), la Unión de Empleados de Transporte de Cataño (“UETC’) y la Autoridad; además, (5) el desembolso de las cantidades (excepto las penalidades en controversia) se pagaría en o antes del 30 de diciembre de 1994; (6) la reclamación de UDEM no devengaría intereses; (7) la estipulación se sometería al Secretario del Trabajo y Recursos Humanos, y (8) “el pago por concepto de honorarios de abogados ascendentes al quince por ciento (15%) de la totalidad a desembolsarse, de conformidad con esta Estipulación, pagaderos a favor del Ledo. Reinaldo Pérez Ramírez. Dicho pago se efectuará el 30 de diciembre de 1994. ” (Enfasis suplido.)
La Autoridad contestó la demanda. aceptando la estipulación entre las partes. No obstante, señaló que mediante “Moción Solicitando Consignación y Oposición a Solicitud de Desacató” presentada el 22 de junio de 2001 en el caso civil núm. KPE-95-0805, consignó la cantidad de $495,315.68. Debido a ello la Autoridad presentó una “Moción de Desestimación”.
Así las cosas, el Ledo. Pérez solicitó honorarios e intervención en el caso KPE-95-0805 la cual fue declarada No Ha Lugar por el TPI. El TPI fundamentó la referida decisión en que el Ledo. Pérez cesó como asesor legal de la Unión y fue sustituido por el Ledo. Miguel González Vargas (“Ledo. González”). Posteriormente, la Autoridad presentó una “Moción Solicitando Paralización de los Procedimientos” hasta tanto no se resolviera la controversia de a quién le pertenecían los honorarios consignados. Ello fue solicitado, debido a que el TPI autorizó el 6 de mayo de 2002 al Ledo. González, el retiro de los fondos consignados por la Autoridad. El TPI no determinó si procedía la paralización del retiro de los fondos.
Eventualmente, la decisión declarando con lugar el retiro de los fondos a favor del Ledo. González fue revocada el 27 de septiembre de 2002 por este Tribunal mediante el recurso KLCE-02-00756, en el cual ordenamos la paralización del desembolso de los honorarios de abogados consignados por la Autoridad hasta que se dilucidara quién era el acreedor de los mismos.
*916 La Autoridad presentó el 31 de octubre de 2002, una “Demanda Contra Tercero” en la que alegó que: (1) de acuerdo con la estipulación, la UDEM acordó pagar honorarios de abogados al Ledo. Pérez; (2) UDEM incumplió con lo pactado de esperar y acatar la determinación que se emitiera en el pleito de las otras uniones (HEO y UTEC) al presentar, por medio del Ledo. González, una demanda contra la Autoridad; (3) en dicha demanda planteó la misma controversia sobre las penalidades, caso Civil KPE96-0351, que fue consolidado con el presentado por la UTEC, civil KPE-95-0805; (4) tanto el Ledo. Pérez como el Ledo. González reclaman el pago de honorarios de abogado alegando cada uno ser el acreedor, y (5) UDEM hizo caso omiso a lo pactado por estipulación lo que conlleva que se decrete la nulidad de ésta por craso incumplimiento por parte de la UDEM y, en todo caso, es ésta quien está obligada de responder por su incumplimiento con lo pactado en la estipulación.
La UDEM presentó su “Contestación a Demanda Contra Tercero” el 10 de marzo de 2003. Posteriormente, UDEM presentó el 14 de marzo de 2003, una “Moción Solicitando Desestimación y/o Sentencia Sumaria”. La Autoridad presentó su oposición señalando que “toda vez que los servicios prestados por los abogados que reclaman honorarios fueron en virtud de servicios profesionales a la UDEM, cualquier deuda que pueda existir es obligación de esta parte y no de la Autoridad de los Puertos”, por lo que no procede la desestimación de la demanda contra tercero.
El Ledo. González presentó el 14 de mayo de 2003, una “Moción de Sentencia Sumaria” en la que indicó que los siguientes hechos son incontrovertibles: (1) el Ledo. González asumió la representación legal de la UDEM en el pleito KPE-96-0357 a los fines de reclamar por parte de la Autoridad el pago de la penalidad sobre vacaciones acumuladas a los empleados; (2) el Ledo. Pérez nunca participó en los referidos pleitos, excepto para solicitar intervención y reclamar el pago de honorarios a su favor; (3) la intervención solicitada fue declarada no ha lugar por el TPI el 17 de octubre de 1996, notificada el 23 de octubre de 1996; (4) aplica la doctrina de cosa juzgada; (5) los pleitos KPE-96-0357 y KPF-95-0805 fueron desestimados, por lo que se acudió ante este Tribunal (KLAN-97-00234/KLAN-97-01166); (6) este Tribunal resolvió mediante Sentencia emitida el 30 de septiembre de 1998 que la Autoridad tenía la obligación de pagar la doble penalidad; (7) el Tribunal Supremo confirmó tal determinación mediante Sentencia emitida en el caso CC-1999-6,9 el 26 de octubre de 2000; (8) el Ledo. González solicitó a la Autoridad el pago de honorarios de abogado por las gestiones realizadas en el pleito KPE-96-0357; (9) la Autoridad se opuso a pagar los mismos porque el Ledo. Pérez también reclamó el pago de honorarios de acuerdo a una estipulación suscrita por las partes, y (10) el TPI mediante Resolución emitida el 6 de mayo de 2002, notificada el 17 de mayo de 2002, resolvió que procedía el retiro de los fondos a favor del Ledo. González. 
El Ledo. González solicitó que el TPI declarara con lugar la solicitud de sentencia sumaria alegando que dicho foro ha determinado previamente que el Ledo. Pérez no es acreedor de los honorarios de abogados. A su vez, el Ledo. González señaló que:

“[sji la posición del demandante es que tiene una reclamación directa contra la AP en virtud de la alegada Estipulación que la AP no defendió en el pleito con la UDEM. De ser así, se trataría de una disputa entre tales partes por consideraciones distintas al derecho del pago de honorarios al compareciente. De igual forma, si como producto de sus acuerdos de servicios profesionales con la UDEM, el demandante reclama honorarios, se trata también de una controversia entre las partes, lo cual no puede afectar el pago de los honorarios con Pérez (de entenderse legal y válido dicho pacta [sic] de honorarios en reclamaciones obreras), o si existe una reclamación directa del demandante contra la AP, nada de ello puede afectar el derecho del compareciente, Ledo. Miguel González, a cobrar los honorarios válidamente obtenidos. ”

En síntesis, el argumento del Ledo. González al solicitar sentencia sumaria estuvo dirigido a que no se puede menoscabar los honorarios trabajados y ganados por éste, independientemente de cualquier planteamiento que pueda tener el Ledo. Pérez al reclamar honorarios a la Autoridad.
*917 La Autoridad presentó su oposición a la solicitud de sentencia sumaria en la que indicó que no procedía la sentencia sumaria solicitada por el Ledo. Pérez por existir controversia sobre los hechos, ya que tanto el Ledo. Pérez como el Ledo. González reclaman ser acreedores.de los honorarios de abogados depositados. A su vez, la Autoridad señaló que los hechos ante la consideración del tribunal no han sido adjudicados ni constituyen cosa juzgada. Por su parte, la UDEM presentó una “Réplica de Oposición a Moción Solicitando Desestimación y/o Sentencia Sumaria” en la que señaló que la Autoridad pretende evadir su obligación de pagar los honorarios de abogados y argüyó que procede la doctrina de cosa juzgada. UDEM solicitó que se desestimara la causa de acción contra ésta.
Por su parte, el Ledo. Pérez presentó una “Moción de Sentencia Sumaria” en la que indicó que: (1). mediante estipulación se acordó pagarle el quince (15%) por ciento de honorarios de la totalidad a desembolsarse de conformidad con la estipulación; (2) el Ledo. Pérez representó la UDEM para evitar re-litigar el estado de derecho resuelto a favor de las uniones, y (3) el derecho de la UDEM al cobro emana de la estipulación suscrita a través del Ledo. Pérez. Su argumento gira en tomo a que las partes están obligadas por la estipulación suscrita entre éstas mientras el Ledo. Pérez era el abogado de la UDEM. El Ledo. Pérez sostuvo que: (1) no existe controversia del pacto habido entre las partes que dispone el pago de honorarios de abogado, y (2) que lo reclamado no constituye cosa juzgada, por lo que solicitó se dictara sentencia sumaria a su favor.
El TPI desestimó el 17 de septiembre de 2003, notificada el 22 de septiembre de 2003, la demanda contra la UDEM presentada por la Autoridad.
El TPI dictó Sentencia el 21 de enero de 2004, notificada el 2 de febrero de 2004, mediante la cual determinó como hechos incontrovertidos que: (1) el Ledo. Pérez ostentó la representación legal de la UDEM; (2) el 28 de diciembre de 1994, la Autoridad y la UDEM suscribieron una Estipulación, por conducto del representante legal de la UDEM, en aquel entonces el Ledo. Pérez, sobre una reclamación de días acumulados y no disfrutados por concepto de vacaciones; (3) el 27 de diciembre de 1995, la Junta de Directores de la UDEM decidió prescindir de los servicios del Ledo. Pérez como representante legal de ésta; (4) la UDEM contrató los servicios del Ledo. González; (5) la UDEM, por conducto del Ledo. González, instó una reclamación contra la Autoridad en el caso UDEM v. Autoridad de los Puertos, KPE-96-0351, planteando la controversia entre las partes sobre la forma en que la penalidad habría de computarse; (6) la Autoridad consignó la cantidad correspondiente a la partida de honorarios de abogado, y (7) la Autoridad satisfizo a los trabajadores de UDEM todos los dineros reclamados y no adeuda cantidad alguna por este concepto.
Mediante la referida Sentencia, el TPI concluyó que no aplicaba la doctrina de cosa juzgada ni impedimento colateral por no haber identidad entre las partes, ya que el Ledo. Pérez nunca fue parte de ninguno de los pleitos por no habérsele permitido la intervención de éste. A su vez, el TPI determinó que la controversia en tomo a quién es el acreedor de los honorarios no fue litigada ni adjudicada en sus méritos. El foro recurrido concluyó que el Ledo. González es el acreedor del pago de los honorarios de abogado. Para ello determinó que:

“Lógicamente, los honorarios de abogado que se disponen en dicha Estipulación hacen referencia al Ledo. Pérez, pues en aquel momento era el representante legal de la UDEM. Ahora bien, una vez el Ledo. Pérez es despedido, la UDEM contrata los servicios del Ledo. González como su representante legal. Es entonces cuando la UDEM, representada ahora por el Ledo. González, decide unirse al pleito con las otras dos uniones para dilucidar la controversia sobre el cómputo de la penalidad.

Según surge de la carta que la UDEM le envió al Ledo. Pérez, para el 27 de diciembre de 1995, la UDEM no tenía ninguna deuda por concepto de los servicios prestados por el demandante. En ese momento, la relación abogado-cliente entre la UDEM y el Ledo. Pérez había terminado. Por lo tanto, entendemos que el Ledo. Pérez no tiene reclamación salarial, en la cual se dictó sentencia en contra la Autoridad, imponiéndole a ésta el pago de honorarios de abogado. En vista de que el Ledo. González fue el representante legal de la 
*918
UDEM, a éste le corresponde recibir el pago por sus servicios prestados. Por tanto, por imperativo estatutario, le corresponde a la Autoridad hacer el pago de honorarios a favor del Ledo. González. ”

El Ledo. Pérez presentó el 11 de febrero de 2004, una “Moción de Determinaciones de Hechos Adicionales y de Reconsideración al Amparo de las Reglas 43.3 y 47 de las de Procedimiento Civil”. El TPI acogió algunas de las determinaciones de hechos solicitadas mediante Resolución del 20 de febrero de 2004, notificada el 9 de marzo de 2004, entre las cuales se destaca el que la UDEM y la Autoridad sobre el cómputo de la penalidad acordaron acatar lo que resolviera el tribunal en la controversia sometida por las otras uniones. En cuanto a la moción de reconsideración, en esta misma fecha, el TPI declaró ésta No Ha Lugar.
Inconforme, el Ledo. Pérez acude ante nos y señala que erró el TPI al no declarar con lugar la sentencia sumaria por él presentada en la que solicitó que se adjudicara que él era el acreedor de los honorarios de abogados consignados por la Autoridad.
II
La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece lo que es una Sentencia Sumaria:

“La moción se notificará a la parte contraria con no menos de diez (10) días de anticipación a la fecha señalada para la vista. Con anterioridad al día de la vista, la parte contraria podrá notificar contradeclaraciones juradas. La sentencia solicitada se dictará inmediatamente si las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito. ”

La sentencia sumaria es un mecanismo procesal discrecional y extraordinario. Su propósito es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo. Vera Morales v. Bravo Colón, _D.P.R._ (2004), 2004 J.T.S. 40, a la pág. 744; Luán Investment Corp v. Rexach Construction Co., lnc., _D.P.R._ (2000), 2000 J.T.S. 196, a la pág. 553; Management Administration Services Corp. v. Estado Libre Asociado de Puerto Rico, _D.P.R._ (2000), 2000 J.T.S. 189, a la pág. 440; Hurtado v. Osuna, 138 D.P.R. 801, 809 (1995); Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624, 632 (1994). Únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. Mediante el mecanismo de sentencia sumaria se obtiene un remedio rápido y eficaz en casos en que queda demostrado que no existe una controversia sobre hechos materiales del litigio. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 911-912 (1994); Revlon v. Las Américas Trust Co., 135 D.P.R. 363, 376 (1994).
De modo, que la sentencia sumaria aligera la tramitación del caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de los documentos surge que no existen controversias de hechos, sino que lo que resta es aplicar el derecho. PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra, a la pág. 912; Caquías v. Asoc. Res. Mansiones de Río Piedras, 134 D.P.R. 181, 216 (1993); Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538, 548 (1991); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272, 279 (1990). No obstante, el propósito de solución rápida está supeditado al principio de alcanzar una decisión justa. Cuadrado Lugo v. Santiago Rodríguez, supra, a la pág. 279.
Se podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surge que no hay controversia real sustancial en cuanto a ningún hecho material y como cuestión de derecho debe dictarse sentencia a favor de la *919 parte promovente. Regla 36.3 de las de Procedimiento Civil, supra. Procede dictar sentencia sumaria cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no hayan sido refutadas. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986). La parte promovida no puede cruzarse de brazos y descansar en sus alegaciones, sino que tiene que refutar los hechos alegados mediante presentación de prueba, y deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. Ramos de Szendrey v. Colón Figueroa, supra, a la pág. 967; PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra, a la pág. 913; Corp. Presiding Bishop CJC of LDS v. Purcell, supra, a la pág. 721. No obstante, el hecho de que no se presente prueba que controvierta la presentada por el promovente no significa necesariamente que procede la sentencia sumaria. Consejo Tit. C. Parkside v. MGIC Fin. Corp., supra, a la pág. 549.
En caso de duda sobre la existencia de controversia sobre hechos, se debe resolver en contra de quien presentó la sentencia sumaria. La sentencia sumaria no permite que el tribunal dirima cuestiones de credibilidad. Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735, 781-782 (1992). El sabio discernimiento es el principio rector para el uso de la sentencia sumaria, pues mal utilizada puede prestarse para despojar a un litigante de su "día en corte", principio elemental del debido procedimiento de ley. Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 613, 617-618 (1990). El TPI debe cerciorarse de la total inexistencia de controversia fáctica y que sólo reste aplicar el derecho. Id., a la pág. 618.
Además, se ha establecido que se debe evitar el uso del mecanismo de sentencia sumaria por no ser el apropiado para resolver en casos en donde hay elementos subjetivos de intención, propósitos mentales o negligencia o cuando el factor credibilidad es esencial. De la misma manera, también hay litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumaria porque en tales casos difícilmente el tribunal puede reunir ante sí toda la verdad de los hechos a través de affidavits o deposiciones. Elías y Otros v. Chenety Otros, 147 D.P.R. 507, 521 (1999).
Aunque este Tribunal debe utilizar los mismos criterios que el tribunal sentenciador al determinar si procede o no dictar sentencia sumaria, estamos limitados al poder sólo considerar los documentos que fueron presentados ante el foro de primera instancia y sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Este Tribunal no puede adjudicar los hechos materiales y esenciales en disputa. Vera Morales v. Bravo Colón, supra, a la pág. 746.
III
La estipulación constituye una admisión judicial qiie implica un desistimiento formal de cualquier contención contraria a ella. Existen diversas clases de estipulaciones: (1) las que constituyen admisiones de hechos y dispensan del requisito de probar tales hechos; (2) las que reconocen derecho y tienen el alcance de una adjudicación respecto a tales derechos, y (3) las que proponen determinado curso de acción, por ejemplo, que se celebre una conferencia con antelación al juicio o se someta un asunto a un comisionado especial. Ramos Rivera v. E.L.A., 148 D.P.R. 118, 126 (1999). Una vez suscrita por las partes y aceptada por el tribunal, la estipulación que finaliza un pleito o un incidente en su transcurso constituye un contrato de transacción que obliga a las partes. Ramos Rivera v. E.L.A., supra, a la pág. 127.
La transacción, por su parte, es un contrato y como tal se perfecciona por el mero consentimiento y desde entonces obliga no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes con la buena fe, al uso y a la ley. Art. 1210 del Código Civil de Puerto Rico, 31 L.P.R.A. § 3375. Mediante el contrato de transacción, las partes, dan, prometen o retienen, cada una alguna cosa, evitando así la provocación de un pleito o poniendo fin al que había comenzado. Art. 1709 del Código Civil, 31 L.P.R.A. § 4821. La transacción de uña causa de acción entre los litigantes debe responder a la voluntad de las partes, ya que, salvo cuando la ley expresamente lo prohíba o lo limite, los derechos se pueden *920 renunciar y transigir. Ponce Gas Service Corp. v. J.R.T., 104 D.P.R. 698, 702 (1976).
La transacción, como todo contrato, no garantiza el evento de que uno de los contratantes incumpla y haga precisa la intervención judicial para vencer la voluntad del rebelde y procurar que la transacción rinda su finalidad esencial de dirimir divergencias en la forma convenida. J. Castán Tobeñas, Derecho Civil español común y floral, 12ma ed., Madrid, Ed. Reus, T. IV, pág. 816; Neca Mortg. Corp. v. A & W. Dev. S.E., 137 D.P.R. 860, 871 (1995). Las partes tienen que considerar los puntos discutidos como definitivamente resueltos, ya que, de lo contrario, la transacción perdería su razón de ser y existir. Citibank v. Dependable, Ins. Co., Inc., 121 D.P.R. 503, 516 (1988).
Hay dos clases de contratos de transacción: el judicial y el extrajudicial. Ñeca Mortg. Corp. v. A & W Dev. S.E., supra, alas págs. 870-871 (1995); Citibank v. Dependable, Ins. Co., Inc., supra, a la pág. 512; A. Martínez & Co. v. Long Construction Co., 101 D.P.R. 830, 834 (1973).
El contrato de transacción judicial es aquél en el cual las partes acuerdan una transacción luego de haber comenzado el pleito judicial y solicitan incorporar el acuerdo al proceso en curso, terminando de esta forma el pleito en cuestión. J.R. Vélez Torres, Curso de Derecho Civil, San Juan, Ed Rev. Jur. U.I.A.P.R., 1990, T. IV, Vol. n, pág. 498. La estipulación suscrita por las partes y aceptada por el tribunal finaliza el pleito y, por lo tanto, constituye un contrato de transacción que obliga a las partes. Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 74 (1987).
Cuando una de las partes no cumple con lo estipulado en una transacción judicial, como regla general, no procede la resolución. El Código Civil dispone que: “la transacción tiene para las partes la autoridad de la cosa juzgada, pero no procederá la vía de apremio, sino tratándose del cumplimiento de una transacción judicial. ” Art. 1715 del Código Civil, 31 L.P.R.A. § 4827. Es decir, en una transacción judicial se va a pedir la ejecución de ésta como si se tratara de una sentencia firme. Neca Mortg. Corp. v. A & W Dev. S.E., supra, a la pág. 875; Citibank v. Dependable Ins. Co., Inc., supra, a la pág. 516; Canino v. Santiago Bellaflores, Inc., 78 D.P.R. 778, 780 (1955).
Por el contrario, se denomina contrato de transacción extrajudicial aquél en el cual las partes antes de comenzar el pleito o estando aún el pleito pendiente llegan al acuerdo sin la intervención del tribunal, en cuyo caso bastará con un mero aviso de desistimiento. Ñeca Mortg. Corp. v. A & W Dev. S.E., supra, a la pág. 870. En caso de incumplimiento de una transacción extrajudicial, la manera de poder llevar a la práctica lo convenido es cuando se haya declarado la eficacia de ésta en el juicio correspondiente y, el tribunal, al evaluar el contrato, puede conceder el remedio de la resolución, siempre y cuando se cumplan con los requisitos establecidos para la resolución de contratos. Neca Mortg. Corp. v. A & W Dev. S.E., supra, a la pág. 875.
IV
En el caso ante nuestra consideración, no existe controversia sobre los hechos materiales a ser considerados; lo que resta es aplicar el derecho ante la polémica de a quién le corresponden los honorarios de abogados consignados por la Autoridad.
De los hechos consignados por el TPI, surge que la UDEM y la Autoridad acordaron una Estipulación el 28 de diciembre de 1994. De la referida Estipulación surge que ésta tuvo lugar como consecuencia de unas demandas presentadas por la UDEM (KPC-91-1861 y KAC-91-1862), y en atención al laudo emitido por el árbitro Pedro Santos del Negociado de Conciliación y Arbitraje en los casos A-1893 y A-1635. Siendo ello así, la Estipulación suscrita por las partes reconoció derechos y tuvo el alcance de una adjudicación respecto a tales derechos. Así lo reconocieron las partes en la propia Estipulación al indicar que ésta “no se trata de una estipulación extrajudicial. ”
*921 Así las cosas, la Estipulación acordada por la Autoridad y la UDEM no es otra cosa que una transacción que obliga a las partes quienes tienen que considerar los puntos discutidos como definitivamente resueltos. Por tanto, debemos examinar lo transado por las partes. 
La Estipulación entre las partes estableció: (1) la cantidad a satisfacerse en concepto de principal; (2) un plan de vacaciones; (3) la cantidad de $4,297,421.31 en concepto de penalidades que no están en controversia; (4) en cuanto a las penalidades en controversia se acordó que se acataría lo resuelto por el tribunal para las otras uniones; (5) la reclamación de UDEM no devengaría intereses; (6) la Autoridad pagaría todas las cantidades el 30 de diciembre de 1994; excepto las penalidades en controversia, y (7) la estipulación se sometería al Secretario del Trabajo y Recursos Humanos. En cuanto a los honorarios de abogado se acordó que:
“Las partes acuerdan el pago por concepto de honorarios de abogado ascendentes al quince por ciento (15%) de la totalidad a desembolsarse, de conformidad con esta Estipulación, pagaderos al Ledo. Reinaldo Pérez Ramírez. Dicho pago se efectuará el 30 de diciembre de 1994. ” (Enfasis suplido.)
La cláusula antes transcrita, establece de forma diáfana que las partes acordaron pagar al Ledo. Pérez la cantidad de quince por ciento (15%) en concepto de honorarios por la totalidad a desembolsarse como resultado de la Estipulación suscrita por las partes. La Estipulación incluyó el pago de principal y el pago de una penalidad que no estaba en controversia. Además, la misma incluyó el pago de la penalidad en controversia de acuerdo con lo que el tribunal reconociera para las otras uniones. Finalmente, el tribunal reconoció que procedía la penalidad en controversia, por lo que ésta era parte de lo acordado por las partes a desembolsarse por la Autoridad. Siendo ello así, el Ledo. Pérez era el acreedor de los honorarios concernientes a dicha partida como consecuencia de la estipulación suscrita por las partes.
El caso de autos no trata sobre si un abogado tiene derecho a reclamar honorarios por ser el representante legal de una parte en un momento determinado. El derecho del Ledo. Pérez surge de la representación legal que en su día ostentó, y de la transacción a la que llegó la UDEM con la Autoridad como consecuencia de los esfuerzos realizados por éste. Debemos recordar que una vez las partes hacen un contrato de transacción, como el de autos, están obligadas a lo pactado. 
y
Por los fundamentos antes expuestos, se revoca la Sentencia emitida por el TPI. Este Tribunal concluye que el Ledo. Pérez es el acreedor de los honorarios de abogados depositados por la Autoridad según fueron acordados con la UDEM mediante la Estipulación del 28 de diciembre de 1994.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2005 DTA 29
1. Si la penalidad procede computarse sobre el principal o en la alternativa sobre una partida equivalente al principal más la penalidad impuesta por el decreto.
2. A su vez, el TPI señaló en su orden emitida el 17 de octubre de 1996, notificada el 23 de octubre de 1996, que el Ledo. Pérez había solicitado la intervención y ésta fue declarada No Ha Lugar, por lo que entendió el TPI que dicha decisión es final y firme.
3. El referido caso fue consolidado con el KPE-95-0805 presentado por la UTEC.
*922 4. El Ledo. Pérez alegó que la determinación del Tribunal de Primera Instancia no fue en los méritos.
5. En aquel entonces, el TPI señaló que:

“Ciertamente, del solicitante haber podido intervenir con un planteamiento de honorarios hubiera sido con relación a los honorarios mientras éste fue representante legal de una de las partes. Definitivamente no entendemos bajo qué fundamentos pudiera el licenciado Pérez pretender recibir honorarios por trabajo no realizados por él y cuando ya no era representante legal en este caso.”

6. Es importante señalar que la Estipulación acordada no establece ninguna condición para que la misma tuviera lugar. Como se sabe, una obligación sujeta a una condición suspensiva obliga al deudor tan pronto la misma se cumple, pero de no materializarse, el deudor queda liberado. Art. 1067 del Código Civil, 31 L.P.R.A. § 3042.
7. Este Tribunal no está adjudicando si el Ledo. González tiene o no ante la UDEM una reclamación de honorarios de abogados por los servicios que éste luego realizó, según le fueron solicitados.