Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| BAR REALTY CORP. T/C/C BAR REALTY INC.<br><br>Recurrido<br><br>V.<br><br>KELVIN GUADALUPE VILLEGAS<br><br>Peticionario | TA2025CE00124 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2022CV10878<br><br>Sobre: Incumplimiento de Contrato, Cobro de Dinero – Ordinario |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Jueza Lotti Rodríguez

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de septiembre de 2025.

Comparece el señor Kelvin Guadalupe Villegas mediante recurso de Certiorari y, en adelante identificado como Guadalupe Villegas o peticionario. Nos solicita que declaremos nula una Sentencia emitida por el Tribunal de Primera Instancia, en adelante TPI, del 1 de noviembre de 2024.[1]

**I**

La Sentencia cuestionada acogió el acuerdo transaccional sometido por las partes incorporando en la misma los términos y condiciones expresados en dicho documento. El inciso sexto de la Estipulación y Solicitud de Sentencia disponía que de Guadalupe Villegas incumplir el acuerdo acogido en la Sentencia tendría que pagar la cantidad total reclamada en la demanda, costas, gastos,

---

[1] Véase entrada número 77 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) ante el TPI.

honorarios de abogado e intereses legales.[2] Así las cosas, la parte demandante aquí recurrida, Bar Realty Corp., h/n/c Bar Realty Inc., en adelante Bar Realty o la corporación, el 14 de enero del año en curso informo al TPI que Guadalupe Villegas había incumplido los términos del acuerdo.  Por tal razón solicitó que se expidiera mandamiento de ejecución por $47,667.41 por concepto de la cuantía reclamada en la Demanda más $34,963.20 por concepto de costas, gastos, honorarios de abogado, e intereses post-Sentencia acumulados desde el 1 de noviembre de 2024 al 14 de enero de 2025, para un total de $82,630.61, más los intereses legales posteriores a la Sentencia que se continuasen generando hasta el pago final de la misma.[3] Así las cosas el 17 de enero de 2025, el foro primario en atención a la petición de Bar Realty a los efectos de ejecutar la sentencia emitió una orden declarando no ha lugar por el momento la misma, pero concediendo 10 días a Bar Realty para exponer el desglose y acreditar mediante prueba documental los $34,963.20 solicitados por concepto de costas, gastos y honorarios de abogado.[4] Bar Realty así lo hizo, presentó las facturas de honorarios, desglose de gastos, costos de transcripción y emplazamientos, entre otros.[5] Conforme con los documentos recibidos el foro primario emitió la Orden de Ejecución el 11 de febrero de 2025, por la cuantía solicitada y el correspondiente Mandamiento de Ejecución de Sentencia.[6]

Así las cosas, el 4 de marzo de 2025, Guadalupe Villegas presentó una moción solicitando se reconsiderara la expedición de la Orden y el Mandamiento en Ejecución de Sentencia. En ella expuso que por motivos de salud emocional había incumplido el acuerdo, pero

---

[2] Id, entrada número 76 ante el TPI.
[3] Id, entrada número 78 ante el TPI.
[4] Véase entrada número 79 de SUMAC ante el TPI.
[5] Id, entrada número 80 ante el TPI.
[6] Id, entrada número 82 ante el TPI.

al momento en que escribía estaba al día. Reiteró su inconformidad con la cuantía de los honorarios de abogados impuesto y recalcó que era un hombre negro, miembro de la comunidad LGTQ+, asalariado con un sueldo de $1,800.00, y quien padecía como todo ser humano de afecciones emocionales. Penalizarlo con el pago excesivo de sobre 200 por ciento de lo acordado, sería forzarlo a la insolvencia o a la quiebra total. El TPI rechazó la petición de García Villegas y emitió Orden y Mandamiento de Ejecución de Sentencia.

Entonces el 22 de mayo de 2025, Guadalupe Villegas presentó una Moción de Relevo de Sentencia al amparo de la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V. Alegó haber presentado la solicitud oportunamente antes de los seis meses de la sentencia advenir final y firme. Repitió los mismos argumentos de su reconsideración en cuanto a su orientación sexual, raza y género alegando que había sido prácticamente obligado a acordar unas cláusulas leoninas que resultaron en una relación contractual injusta y onerosa. Solicitó que se paralizara el mandamiento y ejecución de sentencia y se ordenara una nueva negociación de los términos entre las partes.

El 23 de mayo de 2025 el TPI rechazó su petición. Explicó que había transcurrido en exceso el término de seis meses contados desde el registro de la Sentencia, por lo que el Tribunal carecía de autoridad para considerar la solicitud de relevo de sentencia. Advirtió que, de existir un planteamiento de nulidad de la Sentencia, este debía plantearse en una acción independiente conforme *Bco. Santander P.R. v. Fajardo Farms Corp.,*141 DPR 237 (1996).[7]

Inconforme Guadalupe Villegas solicitó una nueva reconsideración. Planteó que el término de seis meses para presentar la moción de nulidad conforme la Regla 49.2 de

---

[7] Id, entrada número 91 ante el TPI.

Procedimiento Civil, supra comenzaba después de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Entonces proponía que ese momento ocurría cuando la sentencia adviniese final y firme, o sea, a partir de que la sentencia adviene final y firme comenzaba a transcurrir el término de los seis meses. En el caso de autos, eso había ocurrido a partir del 2 de diciembre de 2025. Reclamó que la Regla 49.2, supra, provee un mecanismo procesal post-sentencia y cuando se fundamenta en un fraude al tribunal o cuando es nula, no está sujeta al plazo de seis meses que establece la regla. *Martínez v. Tribunal Superior*, 83 DPR 358, 370 (1961); *Sucn. Rosario v. Sucn. Cortijo*, 83 DPR 678, 682 (1961). Expuso nuevamente que la cláusula punitiva de aceleramiento que requería pagar $3,262.22 por deposiciones y $31,012.25 de honorarios de abogado, para un total de $82,630.61, resultaba excesiva y onerosa, casi 4 veces la cantidad inicial acordada. Y que esas cantidades de gastos y honorarios nunca fueron informadas al señor Guadalupe Villegas y no estaban pactadas en el acuerdo de estipulación.[8]

El 9 de junio el TPI declaró No Ha Lugar la solicitud de reconsideración. El 9 de julio de 2025 Guadalupe Villegas, aun inconforme presentó el recurso que nos ocupa. Nos presenta dos errores que, a su juicio cometió el TPI, estos son.

1) Erró el Tribunal de Primera Instancia al no comprender el alcance de la Regla 49.2 (d) de las Reglas de Procedimiento Civil de Puerto Rico de 2009, según enmendadas, sobre Relevo de Sentencia por nulidad, el cual no tiene término para ser invocado y haber consistentemente declarado No ha lugar al pedido.

2) Erró el Tribunal de Primera Instancia al permitir la implementación de un Acuerdo de Estipulación Transaccional cuyo cumplimiento es más oneroso que el propio proceso de litigación, estableciendo el pago de Honorarios de Abogados y Costas por encima del propio valor del caso.

---

[8] Id, entrada número 92 ante el TPI.

**II**

En su escrito de certiorari la representación legal de Guadalupe Villegas expone que su cliente es un hombre negro, miembro de la comunidad LGTQ+, asalariado con un sueldo de $1,800.00, y que luego de hacer varios pagos, se enfermó y no pudo pagar en el momento acordado. Luego de haberse enfermado Bar Realty reclamó que pagaran unas cantidades que no fueron divulgadas ni informadas en el acuerdo, excesivas, de casi un 200% de la cantidad adeudada y casi cuatro veces la cantidad inicial acordada.

En cuanto al primer error, Guadalupe Villegas expone que la sentencia cuya nulidad solicita debe ser revocada por contener unos acuerdos que contenían unas cuantías excesivamente onerosas que no habían sido informadas ni divulgadas al momento en que se le entregó el acuerdo. Arguye que el tribunal, a instancia propia o a petición de una parte interesada, puede dejar sin efecto en cualquier momento una sentencia nula u obtenida mediante fraude. Por tal razón y entendiendo que los acuerdos contenidos son nulos y no están sujetos a el término extintivo de seis meses, podía incoar una acción de nulidad de sentencia dentro del mismo pleito y no en un pleito independiente. Añade, en cuanto a los méritos de su reclamo que, al llegar a un acuerdo oneroso que impedía su cumplimiento, aplicaría además el artículo 1254 del Código Civil de 2020. También alega la ineficacia o sugiere la revisión del contrato invocando el artículo 1259 del Código Civil de 2020, Lesión por excesiva onerosidad sobreviniente.

Sobre el segundo error propone la aplicación del artículo 1258 del Código Civil de 2020 que, atiende la figura de la lesión por ventaja patrimonial desproporcionada, en el cual dispone que, "Este artículo permite que un tribunal pueda anular o revisar un contrato oneroso cuando una de las partes obtiene injustificadamente una ventaja patrimonial desproporcionada, aprovechándose de la

necesidad, inexperiencia, condición cultural, dependencia económica o avanzada edad de la otra". Reitera que se vio obligado a llegar a un acuerdo que resultó una relación contractual injusta y onerosa.

En relación a la cantidad de honorarios cobrados, recalcó que no era proporcional a la cantidad reclamada en la demanda. Señala conflicto de interés entre Bar Realty y sus abogados. Como analogía puntualizó que los hechos serían representativos de una relación en que al amo se le daba dinero por compensación por perder los esclavos, y a los esclavos no se le daba nada. Indicó que el 22 de marzo de 1873 se aprobó la ley que abolió la esclavitud en Puerto Rico y en el 1865 la enmienda decimotercera a la Constitución de los E.U. que abolió la esclavitud.

Así las cosas, a su entender, procede que el foro primario paralice la ejecución de la Sentencia y, permita a Guadalupe Villegas continuar el acuerdo o, en la alternativa, a realizar un nuevo acuerdo con términos y condiciones que sean más razonables y se puedan cumplir.  En fin, nos solicita que revoquemos la resolución interlocutoria que rechazó declarar la nulidad de la sentencia conforme la Regla 49.2, *supra*.

Concedido el término reglamentario para oponerse al recurso compareció la corporación. Expuso que Guadalupe Villegas pretendía que se le relevara de cumplir con un acuerdo de transacción perfectamente válido que había sido extensamente negociado por las partes, por conducto de sus respectivos abogados y, que Guadalupe Villegas leyó y firmó con su puño y letra, y se sometió mediante estipulación al TPI para asegurar su cumplimiento.

Explicó que el pleito entre las partes era producto de un Contrato de Alquiler para un local comercial, suscrito por las partes el 18 de marzo de 2019. Sostuvo que Guadalupe Villegas, diseñador

de modas, por más de tres años estuvo usando el local arrendado como su atelier, incumpliendo con la obligación básica de todo arrendatario; que es la de pagar los cánones de arrendamiento contractualmente pactados. A raíz de ello, tras dar por terminado el contrato, Bar Realty presentó demanda, requiriendo el cobro de $47,667.41 en concepto de cánones de arrendamiento vencidos, penalidad por pago tardío contractualmente pactada y facturas de energía eléctrica debidas bajo el Contrato de Alquiler. Además, solicitó la imposición de interés por mora sobre la cuantía total adeudada de $47,667.41, a partir de septiembre de 2022, más intereses post-sentencia hasta el pago total de lo debido. Relató que el trámite de descubrimiento de prueba fue tortuoso adjudicándolo a la conducta judicial de Guadalupe Villegas quien alegó sometía contestaciones incompletas y evasivas, por lo que BAR Realty tuvo que pedir auxilio del TPI en múltiples ocasiones para que se le ordenara descubrir lo solicitado e, incluso, sanciones por incumplimiento con las órdenes de descubrimiento.[9] De esta manera adujo que Guadalupe Villegas mediante su conducta procesal hizo todo lo posible por retrasar y encarecer los trámites del litigio. Especificó que las negociaciones, se extendieron por cinco meses y medio, y requirieron múltiples conversaciones entre los representantes legales que evidencian que los términos fueron discutidos. Arguye que Guadalupe Villegas sabía que, por su culpa, había incurrido en múltiples gastos, incluyendo gastos de deposiciones, pago de dieta y millaje, emplazador y honorarios de abogado. Afirmó que, para acabar con el azaroso litigio y las interminables negociaciones, BAR Realty aceptó transar por $26,000.00, pagaderos a plazos, en un periodo de cinco años, sin cobrar al Demandado intereses por permitirle pagarle a plazos.

---

[9] Véase entradas números 38, 45, 52 y 61 ante el TPI.

Puntualizó que la cláusula penal fue expresamente discutida entre los abogados telefónicamente. No fue objeto de disputa alguna. Especificó que estaba incluida en el primer borrador de estipulación entre las partes, sin que fuera objeto de cambio alguno contrario a otras clausulas.

Bar Realty realzó que el TPI no aceptó sin más la solicitud de honorarios de abogado pues le requirió el desglose de la partida adicional y que acreditara mediante prueba documental lo solicitado.[10] Expuso que el 22 de enero de 2025, presentó Moción en Cumplimiento de Orden, sometiendo al TPI bajo sello todas las facturas de sus representantes legales para acreditar los $31,077.35 solicitados en honorarios de abogados.[11] Además, presentó, sin restricción, todas las facturas que acreditaban las costas reclamadas (incluyendo las facturas de la compañía de taquígrafos, del emplazador, comprobante de presentación, copias y demás), más una tabla con el cómputo de los intereses post-sentencia hasta la fecha en que se solicitó la ejecución (i.e., desde el 1 de noviembre de 2024 hasta el 14 de enero de 2025).

Expuso en defensa de su reclamación que conforme a lo resuelto en el normativo *Citibank v. Dependable Ins. Co., Inc.*, supra, un contrato de transacción no podía dejarse sin efecto meramente porque, tras haber llegado al acuerdo, una de las partes entendiese que lo acordado no le convenía y quisiera zafarse de la transacción. El que pretenda dejar sin efecto un contrato de transacción tiene que demostrar que hubo "error, dolo, violencia o falsedad de documento," circunstancias que aseguro no estaban presentes en este caso.

Su posición era que el lenguaje del acuerdo transaccional era claro. La concesión de BAR Realty bajo el acuerdo fue el relevar a

---

[10] Id, entrada número 79 ante el TPI.
[11] Id, entrada número 80 y sus correspondientes Anejos 1-18 ante el TPI.

Guadalupe Villegas de toda reclamación y desistir de la acción en cobro del dinero adeudado bajo el Contrato de Alquiler—esto es, los $47,667.41 en concepto de cánones de arrendamiento vencidos y adeudados, la penalidad por pago tardío contractualmente pactada y facturas de luz, más los intereses por mora sobre la cuantía total adeudada de $47,667.41, a partir de septiembre de 2022, más intereses post-sentencia hasta el pago total de lo debido. A cambio de esa concesión, el señor Guadalupe Villegas desistiría de su reconvención y se obligó, no sólo a pagar a BAR Realty $26,000,00, sino a hacerlo cumpliendo estrictamente con los términos de pago pactados en la estipulación.

Para la corporación, la alegación de nulidad constituye un nuevo pretexto ideado tardíamente por Guadalupe Villegas para seguir evadiendo sus obligaciones contractuales. Así concluye enfatizando que cuando Guadalupe Villegas recurrió al TPI el 4 de marzo de 2025, para pedir reconsideración de la orden de ejecución y que se dejara sin efecto el mandamiento de ejecución, éste no planteó que la estipulación fuese nula. En vez, en ese entonces el Demandado trató de excusar su incumplimiento, alegando que se había afectado su estado emocional.[12] No fue sino hasta el 22 de mayo de 2025 – pasados seis meses de suscrito el acuerdo y de dictada la sentencia que este por vez primera, planteó que el acuerdo transaccional que leyó y firmó con su puño y letra, y se sometió al TPI mediante estipulación era nulo.[13]

En fin, concluyó que lo que realmente buscaba Guadalupe Villegas era la moderación de la pena; cosa que no procedía ante las circunstancias. Arguyó que aunque los tribunales están facultados a moderar la penalidad pactada en caso de excesiva onerosidad, en reconocimiento a la libertad de contratación y a los propósitos

---

[12] Véase entrada número 84, ante el TPI.
[13] Véase entrada número 90, ante el TPI.

punitivos de la cláusula penal, el Tribunal Supremo de Puerto Rico había resuelto que "la facultad moderadora de los tribunales debe usarse sólo con gran cautela y justificación, pues la acción de limitar la autonomía de la voluntad de los contratantes debe ejercerse únicamente en circunstancias extraordinarias". *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 176 (citando a Jack's Beach Resort, Inc. v. Cía. Turismo, 112 DPR 350). Reiteró que en nuestro ordenamiento cuando el acuerdo de transacción ha sido celebrado válidamente, "el juez viene obligado a tener en cuenta la decisión de las partes y a no contradecirla, aunque la crea injusta." *Citibank v. Dependable Ins. Co., Inc.,* 121 DPR 517; *Pueblo v. Andino*, 78 DPR 778, 782 (1955). Siendo el contrato de transacción perfectamente válido, no procedía la moderación de la cláusula penal contenida en la estipulación, aunque el Demandado, a posteriori, la encontrase injusta. En cuanto a la petición de nulidad conforme la Regla 49.2 de Procedimiento Civil, *supra* afirmó que no procedía pues no se cumplían los fundamentos que activaban la misma.

**III**

El Certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. 32 LPRA § 3491; *McNeil Healthcare, LLC v. Municipio de Las Piedras*, 206 DPR 391, 403 (2021); *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *IG Builders v. BBVAPR*, 185 DPR 307, 337 (2012); *García v. Padró*, 165 DPR 324, 334 (2005).

En cuanto a la discreción para expedir el mismo, puntualizamos que la discreción judicial implica la autoridad para elegir entre diversas opciones, sujeto a no enajenarnos del Derecho. Se considera una forma de razonabilidad aplicada al discernimiento judicial con el fin de llegar a una conclusión justa. *IG Builders v.*

*BBVAPR, supra,* pág. 338; *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *García v. Padró, supra*, págs. 334–335.

El Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B enumera los criterios que nos sirvan de guía al momento de ejercer nuestra discreción, estos son:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**RELEVO DE SENTENCIA**

La Regla 49.2 de Procedimiento Civil, dispone:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
> (a) error, inadvertencia, sorpresa o negligencia excusable;
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
> (d) nulidad de la sentencia;
> (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
> (f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

> Las disposiciones de esta regla no aplicarán a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (c) o (d). **La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento.**
>
> Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia ni suspenderá sus efectos.
>
> Esta regla no limita el poder del tribunal para:
>
> (1) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;
>
> (2) conceder un remedio a una parte que en realidad no haya sido emplazada, y
>
> (3) dejar sin efecto una sentencia por motivo de fraude al tribunal. Mientras esté pendiente una apelación o un recurso de certiorari de una resolución final en procedimiento de jurisdicción voluntaria, el tribunal apelado no podrá conceder ningún remedio bajo esta regla, a menos que sea con el permiso del tribunal de apelación. Una vez que el tribunal de apelación dicte sentencia, no podrá concederse ningún remedio bajo esta regla que sea incompatible con el mandato, a menos que se obtenga previamente permiso para ello del tribunal de apelación. En ambos casos, la moción de relevo deberá siempre presentarse ante el tribunal apelado dentro del término antes señalado, y si éste determina que estaría dispuesto a conceder el remedio, se acudirá entonces ante el tribunal de apelación para solicitar el referido permiso. 32 LPRA Ap. V., Reg. 49.2. (Énfasis nuestro).

La antedicha regla define la vía procesal y los fundamentos para solicitar el relevo de los efectos de una sentencia. La regla es un mecanismo post-sentencia para impedir que los tecnicismos y sofisticaciones frustren los fines de la justicia. *García Colón et al v. Sucn. González,* 178 DPR 527, 539 (2010). El remedio provisto permite al tribunal hacer un balance entre dos intereses en conflicto. Por un lado, está el interés de que toda litigación concluya y tenga finalidad. Por otra parte, está el interés de que en todo caso se haga justicia. *Íd.*, pág. 540. Cabe resaltar que los tribunales tienen discreción para conceder o no el relevo de una sentencia, independientemente de que existan algunos de los fundamentos de la Regla 49.2 *, supra,* salvo en los casos de nulidad o cuando la

sentencia ha sido satisfecha. *Náter v. Ramos,* 162 DPR 616, 624 (2004); *Rivera v. Algarín,* 159 DPR 482, 490 (2003).

El peticionario de una moción de relevo de sentencia está obligado a justificar su solicitud, amparándose en una de las causales establecidas en la Regla 49.2, *supra.* Esta regla debe interpretarse liberalmente. No obstante, **no es una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración.** *García Colón et al v. Sucn. González, supra,* pág. 541; *Olmeda Nazario v. Sueiro Jiménez,* 123 DPR 294, 299 (1989). **Tampoco está disponible para alegar cuestiones sustantivas que debieron plantearse mediante reconsideración o apelación**. *Íd.* (Énfasis nuestro.)

Al examinar una solicitud de relevo de sentencia bajo la Regla 49.2, *supra,* el juez deberá estar atento al tiempo que media entre la sentencia y la solicitud de relevo, el perjuicio que sufriría la parte contraria si se concede el relevo de sentencia y el perjuicio que sufriría la promovente de no ser concedido el remedio solicitado. *Pardo v. Sucn. Stella,* 145 DPR 816, 825 (1998).

La Regla 49.2, *supra,* faculta a los tribunales a relevar a una parte de los efectos de una sentencia, cuando se determina su nulidad. Una sentencia es nula cuando se dictó sin jurisdicción o cuando se quebró el debido proceso de ley. Cuando la sentencia es nula, no hay margen para la discreción y tiene que ser dejada sin efecto, independientemente de los méritos de la defensa o reclamación del perjudicado. Una sentencia nula tampoco está sujeta al término de seis meses establecidos en la Regla 49.2, *supra. García Colón et al v. Sucn. González, supra,* págs. 543-544.

No obstante, el plazo de seis meses es inoperante en aquellas ocasiones que la sentencia sea nula cuando se ha dictado sin jurisdicción o cuando se violó el debido proceso de ley. *García Colon*

*v. Sucn. Gonzalez, supra,* 543; Javier Echevarría Vargas, *Procedimiento Civil Puertorriqueño,* 1ª ed. rev., Colombia, 2012, pág. 297. Ello es así, pues es una sentencia nula en derecho y, por lo tanto, inexistente. *Íd.* Por ello, esa nulidad es subsanable con el transcurso del tiempo, ya que no comienzan a decursar los términos. *Íd.* "Ello significa que, independientemente el tiempo que transcurra, una sentencia nula podrá advenir a ser ejecutable". *Íd.*

En lo pertinente, aún transcurrido el término de seis meses, la propia regla reconoce el poder de un tribunal para ver un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento. *Rivera v. Jaume, supra,* págs. 573-574. La acción independiente está predicada en la justicia fundamental de la reclamación. *Íd.* Por lo tanto, los remedios que provee la Regla 49.2, *supra,* reduce considerablemente el ejercicio de una acción independiente en los casos en que ha transcurrido el término fatal de seis meses y las circunstancias sean de tal índole que el tribunal pueda razonablemente concluir que mantener la sentencia constituiría una grave injusticia. *Rivera v. Jaume, supra,* 574, citando a *Figueroa v. Banco de San Juan,* 108 DPR 680, 689 (1979).

El TPI rechazo la invitación de Guadalupe Villegas a decretar la nulidad de la sentencia por haber presentado la solicitud de relevo de sentencia en exceso del término de seis meses en que la sentencia advino final y firme.  No obstante, especificó que; "[d]e existir un planteamiento de nulidad de la Sentencia, este deberá plantearse en una acción independiente"....

**IV**

La Sentencia por Estipulación se notificó el 1 de noviembre de 2024.[14] La mismo advino final y firme pues no se presentó recurso

---

[14] 77

de apelación alguno. No es hasta el 22 de mayo de 2025 que Guadalupe Villegas presento la Moción de Relevo conforme la regla 49.2 de Procedimiento Civil, *supra*. Ciertamente a dicha fecha habían transcurridos en exceso de seis meses desde el dictamen, por lo que, si pretendía cuestionarlo debía presentar el reclamo en un pleito independiente, tal y como advirtió el foro primario.

Por los fundamentos antes expuestos, se expide el recurso de *certiorari* y se confirma la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones