ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| FRANCISCO PAGÁN MALDONADO<br><br>Apelante<br><br>V.<br><br>ANABEL CRUZ FLORES<br><br>Apelado | TA2025CE00232 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Comerío<br><br>Caso Núm.: AI2024CV00521<br><br>Sobre: Liquidación de Bienes |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez y la Jueza Boria Vizcarrondo

Rivera Marchand, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 5 de septiembre de 2025.

Comparece ante nosotros, la Sra. Anabel Cruz Flores (Sra. Cruz Flores o peticionaria) y solicita que revoquemos la *Resolución* que el Tribunal de Primera Instancia, Sala Superior de Comerío (TPI o foro primario) notificó, el 3 de julio de 2025, la cual fue objeto de reconsideración. En ella, el foro primario se negó a intervenir con lo estipulado por las partes a través de un acuerdo transaccional judicial, el cual, dicho foro adoptó e hizo formar parte de la *Sentencia* por estipulación, notificada el 8 de mayo de 2025. En la alternativa, suplica que ordenemos la celebración de una vista evidenciaria a los efectos de que las partes puedan acreditar su intención al suscribir el referido acuerdo.

Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de *certiorari.*

### I.

Surge del expediente electrónico que, el 1 de agosto de 2023, quedó disuelto el matrimonio habido entre la señora Cruz Flores y

el Sr. Francisco Pagán Maldonado (señor Pagán Maldonado o recurrido). Transcurrido más de un año, el señor Pagán Maldonado instó la causa de epígrafe sobre liquidación de bienes gananciales. Con el propósito de finalizar los asuntos pendientes relacionados a la extinta sociedad ganancial, el 7 de mayo de 2025, las partes otorgaron una *Estipulación sobre liquidación y adjudicación de sociedad legal de gananciales,* la cual transcribimos a continuación:

1. En el caso de autos, se instó acción para la liquidación y adjudicación de los bienes y obligaciones de la extinta sociedad legal de gananciales, que las partes tuvieron constituida durante su matrimonio.

2. Dicho vínculo matrimonial fue disuelto mediante sentencia del Tribunal de Primera Instancia, Sala Superior de Aibonito, el 1 de agosto de 2023 ("Fecha de disolución"), en el caso civil número AI2023RF00063, Anabel Cruz Flores v. Francisco Pagán Maldonado, sobre ruptura irreparable.

3. Conforme el inventario realizado, existen los siguientes bienes y obligaciones gananciales, sujeto a los siguientes acuerdos de liquidación y adjudicación:

  a. Bienes

  i. Durante el matrimonio, las partes adquirieron el siguiente predio de terreno con estructura dedicada a vivienda ("Propiedad"): Lote 197, Carretera PR-558 interior, Parcelas Nuevas, Barrio Helechal, Barranquitas, Puerto Rico, 00794; con número de catastro 272-060-298-08-000. Cada una de las partes es dueña del cincuenta por ciento (50%) de la Propiedad, por haberla adquirido durante la vigencia de su matrimonio.

  ii. **Las partes han acordado poner la Propiedad a la venta en el mercado abierto y público general, y venderla a precio de tasación o, en la alternativa, a la mejor oferta. Para ello, las partes designarán en conjunto un corredor de bienes raíces. Tras recibir la primera oferta de compra, las partes acuerdan mantener la Propiedad a la venta durante un término adicional de treinta (30) días. Transcurrido dicho término, sin que se haya recibido una mejor oferta por escrito, las partes acuerdan aceptar la primera oferta de compra.**

  iii. Las partes acuerdan adjudicar el precio de compraventa en partes iguales entre ambos, luego de deducir de dicho precio los créditos descritos más adelante, así como los costos asociados a la venta [de] la Propiedad, incluyendo los asociados a servicios de bienes raíces, gastos legales, deudas pendientes ante el CRIM u otras entidades, entre otros.

  b. Obligaciones

  i. Durante la vigencia del matrimonio las partes contrajeron deudas, por concepto de las siguientes tarjetas de crédito ("Tarjetas de crédito"): (i) JetBlue, (ii) The Home Depot, (iii) Capital One Journey, (iv) Capital One Quicksilver, (v) Hilton Honors, (vi) TJX

Rewards, (vii) TD (viii) Bank, [sic] (ix) Wells Fargo.

ii. Las partes han acordado adjudicar a Pagán Maldonado las deudas por concepto de las Tarjetas de Crédito.

c. Créditos

i. En el momento del otorgamiento de la correspondiente escritura de compraventa de la Propiedad, Cruz Flores entregará a Pagán Maldonado, tres pagos: (1) uno por la suma de cuatrocientos cuarenta y seis con noventa centavos ($446.90), que equivale a la mitad de la deuda ganancial habida con la AAA, saldada en su totalidad por Pagán Maldonado; (2) otro pago de ciento setenta y cinco ($175.00), equivalente a la mitad de los honorarios de tasador, pagados en su totalidad por Pagán Maldonado; y, por último, (3) un pago de ochocientos dólares ($800.00)[,] equivalente a la mitad de los gastos de mantenimiento, pagados en su totalidad por Pagán Maldonado.

ii. Fuera de lo antes mencionado, ambas partes renuncian a cualquier crédito al que pudiesen tener derecho frente a la otra parte.

4. Las partes reconocen que, con el presente acuerdo, al cual se obligan a dar fiel cumplimiento, finiquitan todos los asuntos pendientes con relación a los haberes y obligaciones de la extinta sociedad legal de gananciales habida entre estos.

5. Además, las partes acuerdan que, si alguna disposición de este acuerdo fuese declarada nula y sin validez por un tribunal competente, las restantes disposiciones de este escrito permanecerán en vigor, como si la sección que fuera declarada nula y sin validez, nunca hubiese sido parte de este.

6. Cualquier controversia concerniente a este acuerdo será atendida ante el Tribunal General de Justicia de Puerto Rico y se regirá bajo las leyes de Puerto Rico. Las partes excluyen expresamente a la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico como foro para atender este asunto.

7. Este acuerdo sustituye cualquier acuerdo previo y que esté en conflicto que haya sido suscrito con anterioridad por las partes, y representa la última voluntad expresada por las partes con respecto a la materia de este acuerdo.

8. Las partes declaran que no están sujetas a ninguna obligación legal, contractual, o de algún otro tipo que puedan hacer que este Acuerdo sea ilegal o ineficaz. (Nota omitida.) (Énfasis nuestro.)

En igual fecha, el Sr. Pagán Maldonado presentó el referido acuerdo transaccional ante el TPI, mediante una *Moción para presentar acuerdo por estipulación y solicitud de sentencia.* Evaluado lo anterior, el foro primario acogió tales acuerdos y los hizo formar parte de su *Sentencia* por estipulación.

No obstante, lo anterior, la señora Cruz Flores solicitó la intervención del foro primario tras recibir la oferta del señor Pagán Maldonado para adquirir su participación sobre el referido inmueble

por $10,000.00. En su escrito, la señora Cruz Flores argumentó que lo acordado fue que el precio de venta del inmueble ganancial debía ser, como mínimo, el valor de tasación de $54,000.00. Para sustentar su postura, la señora Cruz Flores hizo referencia a una oferta que el señor Pagán Maldonado le cursó, vía correo electrónico, el 4 de marzo de 2025.[1] Según la señora Cruz Flores, a raíz de lo anterior, ambas partes entendieron que el precio base de venta debía ser el valor de tasación acordado, entiéndase, $54,000.00.

En su oposición, el señor Pagán Maldonado arguyó que lo estipulado por las partes fue que el inmueble se vendería a precio de tasación o, en su defecto, a la mejor oferta. De conformidad, solicitó al TPI que ordene la ejecución de la sentencia.

Evaluadas las posturas de ambas partes, así como, la subsiguiente réplica de la señora Cruz Flores, el foro primario notificó la *Resolución* impugnada en la cual decretó que "[l]as partes deben sujetarse al cumplimiento de lo estipulado." Resolvió, además, que lo discutido entre las partes -previo a la transacción judicial- no puede considerarse debido al efecto de cosa juzgada de lo convenido en la transacción.

Tras solicitar sin éxito la reconsideración del dictamen, la cual el foro primario adjudicó mediante su *Resolución Interlocutoria,* notificada el 16 de julio de 2025, la peticionaria acude ante esta Curia y le imputa al foro primario lo siguiente:

> Erró el Tribunal de Primera Instancia al aplicar inflexiblemente la doctrina de cosa juzgada a una controversia surgida en la etapa de ejecución de sentencia, al concluir que la cláusula 3(a)(ii) no admitía interpretación por haber sido sancionada mediante sentencia, y al no reconocer que el valor de tasación acordado constituía el precio mínimo de venta del inmueble en controversia, pese al disenso sustancial entre las partes sobre su alcance.

---

[1] Véase, Entrada Núm. 20 en SUMAC-TPI, Anejo 1. En lo pertinente, la propuesta del señor Pagán Maldonado lee: "[e]l demandante propone poner a la venta la Propiedad, a precio de tasación, ($54,000.00), o mejor oferta, y dividir el mismo en partes iguales entre ambas partes, luego de deducir los gastos legales, los de tasación, y cualquier otro necesario para la venta de la propiedad, incluyendo CRIM y corredor de bienes raíces. Se acompaña reporte de tasación y factura."

En respuesta, el recurrido se opone a la expedición del auto de *certiorari.* En su escrito argumenta que, la peticionaria consintió válidamente a la transacción judicial que pretende enmendar, sin invocar la doctrina de vicios en el consentimiento, y ahora procura enmendar una *Sentencia* final, firme e inapelable.

Con el beneficio de las posturas de ambas partes, resolvemos.

## II.

### A. Expedición de la Petición de *Certiorari* post sentencia

Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones, mediante auto de *certiorari. Torres González v. Zaragoza Meléndez,* 211 DPR 821, 847 (2023). El recurso de *certiorari* es un auto procesal extraordinario, por el cual, un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1; *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* supra.

Las Reglas de Procedimiento Civil establecen que, el Tribunal de Apelaciones expedirá el recurso de *certiorari,* cuando el peticionario recurra de una resolución u orden sobre remedios provisionales, *injunctions* o de la denegatoria de mociones dispositivas. *Torres González v. Zaragoza Meléndez,* supra. En ese sentido, el auto de *certiorari* es limitado y excluye aquellas determinaciones interlocutorias que, pueden esperar hasta la determinación final del tribunal para formar parte de un recurso de apelación. *800 Ponce de León v. AIG,* 205 DPR 163 (2020). El delimitar la revisión, a instancias específicas, tiene como propósito evitar la dilación que causaría la revisión judicial de controversias, que, pueden esperar a ser planteadas a través del recurso de

apelación. *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478 (2019).[2] A tenor de la Regla 11(C) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, cuando la citada Regla 52.1 impida expedir el auto de *certiorari*, procede denegar su expedición.

Ahora bien, la Regla 52.1 de Procedimiento Civil de 2009, *supra*, establece excepciones que permiten la revisión de: (1) decisiones sobre admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) casos de relaciones de familia; (5) asuntos de interés público y (6) situaciones en la cuales esperar a la apelación constituye un fracaso irremediable a la justicia. *800 Ponce de León v. AIG*, supra.

Como puede observarse, la Regla citada no contempla los **dictámenes posteriores a la sentencia**, por lo que, al determinar si procede la expedición de una petición de *certiorari*, el Tribunal de Apelaciones viene obligado a acudir a lo dispuesto en la Regla 40 de nuestro Reglamento, *supra*; *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023).

De imponerse las limitaciones de la Regla 52.1*, supra*, a la revisión de dictámenes post sentencia, tales determinaciones inevitablemente quedarían sin posibilidad alguna de revisión apelativa. *BPPR v. SLG Gómez-López,* supra. En tal sentido, es preciso enfatizar que, si bien el auto de *certiorari* es un mecanismo procesal discrecional, dicha prerrogativa del foro revisor no debe hacer abstracción del resto del derecho. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 711 (2019).

Cabe destacar que, el examen que hace este Tribunal, previo a expedir un *certiorari*, no se da en el vacío ni en ausencia de otros

---

[2] Citando a *Mun. de Caguas v. JRO Construction*, supra; *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2017).

parámetros. *800 Ponce de León v. AIG, supra.* Véase, además, *Mun. de Caguas v. JRO Construction,* supra. A fin de que, este Tribunal pueda ejercer su discreción de manera prudente, la Regla 40 del Reglamento de Apelaciones, *supra,* establece los criterios que deberán ser considerados, al determinar si procede o no expedir un auto de *certiorari.*[3] Los referidos criterios establecidos en la citada Regla 40 son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Como ya indicamos, los criterios antes transcritos, nos sirven de guía para poder determinar si procede o no intervenir en el caso, en la etapa del procedimiento en que este se encuentra. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97 (2008). De esta manera, el foro apelativo deberá ejercer su facultad revisora, solamente en aquellos casos en que se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *BPPR v. SLG Gómez-López,* supra.

**III.**

En su recurso, la peticionaria cuestiona los dos dictámenes interlocutorios que notificó el foro primario, mediante los cuales, se negó a intervenir con lo estipulado por las partes en el acuerdo transaccional antes transcrito. Por su parte, el recurrido se opone y

---

[3] Véase, *Mun. de Caguas v. JRO Construction, supra,* pág. 712.

argumenta que la intención de la peticionaria es enmendar la transacción judicial y la *Sentencia* por estipulación que dictó el foro primario, que advino final y firme.

En la *Resolución* del TPI, notificada el 3 de julio de 2025, el foro primario hizo constar que, por virtud de la normativa de *Neca Mortg. Corp. v. A&W Dev. S.E.,* 137 DPR 860, 870 (1995), ratificada en *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 904 (2012), el contrato de estipulación objeto de esta controversia constituye un contrato de transacción judicial. Lo antes debido a que, luego de haber iniciado el pleito ante el tribunal, las partes firmaron un acuerdo transaccional para poner fin a la controversia entre ellos y solicitaron al foro judicial incluir dicho acuerdo al pleito en curso.

Cónsono con lo anterior, el foro primario expuso que, la Cláusula 3(a)(ii) del acuerdo transaccional es clara, goza del aval del foro judicial y forma parte integral de la *Sentencia* por estipulación, notificada el 8 de mayo de 2025. En particular concluyó que, las partes acordaron que venderían la propiedad objeto de controversia bajo una de estas alternativas, a saber: a precio de tasación o a la mejor oferta recibida en el mercado abierto. Añadió, citando a *Canino v. Santiago Bellaflores,* 78 DPR 778 (1955) y a *Citibank Dependable Ins. Co., Inc.,* 121 DPR 503 (1988) que, las partes no pueden volver sobre los asuntos resueltos mediante una transacción judicial, de lo contrario, esta última perdería su razón de ser y de existir.[4] El TPI puntualizó que, el tribunal tampoco debe considerar lo ocurrido previo al acuerdo transaccional, tal cual sugiere la peticionaria, debido a que la transacción judicial tiene el efecto de cosa juzgada, y puede hacerse cumplir mediante los trámites de la ejecución de la sentencia. *Neca Mortg. Corp. v. A&W Dev. S.E.,* supra.

Luego de analizar el expediente ante esta Curia, a la luz del derecho aplicable, determinamos denegar la expedición del auto

---

[4] Véase, además, *Rodríguez Rosado v. Zayas Martínez,* 133 DPR 406, 410 (1993).

solicitado. La peticionaria no nos puso en posición de hallar un fundamento jurídico para dejar sin efecto los dictámenes interlocutorios recurridos, en ausencia de error manifiesto, arbitrariedad, prejuicio o parcialidad. Tampoco identificamos criterio alguno que nos mueva a intervenir con los dictámenes del foro primario, en aras de evitar un fracaso de la justicia. Al amparo de los principios para la expedición del auto de *certiorari* que dispone la Regla 40 de nuestro Reglamento, *supra,* nos abstendremos de ejercer nuestra función revisora sobre este asunto.

**IV.**

Por los fundamentos expuestos, denegamos la expedición del auto de *certiorari*, según presentado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones